UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  25-20423-CIV-KMM

MARISSA A. COSCULLUELA,

    Plaintiff,

    v.

ANDREA LUCAS, Chair
of the U.S. Equal Employment
Opportunity Commission,

    Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Defendant, Andrea Lucas, Chair of the U.S. Equal Employment Opportunity Commission ("EEOC" or "Defendant"), by and through the undersigned Assistant United States Attorney and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby files her Motion for Summary Judgment and incorporated Memorandum of Law.


Respectfully submitted,

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By:   **Alexander N. DerGarabedian**
ALEXANDER N. DERGARABEDIAN
Court ID A5503439
United States Attorney's Office
500 East Broward Blvd., Suite 700
Fort Lauderdale FL 33394
Telephone: (954) 660-5792
E-Mail: Alexander.DerGarabedian@usdoj.gov

*Counsel for Defendant*

## I.      INTRODUCTION

Plaintiff, Marissa A. Cosculluela ("Plaintiff") is currently employed with the EEOC as an Enforcement Supervisor. Her first-level supervisor is Scott Kelley ("Mr. Kelley"), Enforcement Manager, and her second-level supervisor is Evangeline Hawthorne ("Ms. Hawthorne"), the Miami District Office ("MIDO") Director. This lawsuit arises from Plaintiff's disagreement with the management decisions of the EEOC, made by Ms. Hawthorne and Mr. Kelley. The objective evidence shows that Mr. Kelley rated the Plaintiff based on work performance and nothing else. Plaintiff's lawsuit consists entirely of speculation and conjecture, and summary judgment is warranted in Defendant's favor.

Plaintiff asserts one claim of retaliation under Title VII. *See* Exhibit 7, Plaintiff's Complaint at 27-37. Summary Judgment is warranted for several reasons.

First, Plaintiff initiated an EEO counseling on November 3, 2023. Therefore, all of her claims prior to 45 days before that date, i.e. September 9, 2023, are time barred[1] and should be dismissed for failure to exhaust administrative remedies.

---

[1] "Before bringing a Title VII action in court, a federal employee must first seek relief from the agency where the alleged discrimination occurred." *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1243 (11th Cir. 2012); 2 U.S.C. § 2000e-16(b). "[A]n aggrieved employee must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory." *Id.*, citing 29 C.F.R. § 1614.105(a)(1). "Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred." *Id.* "Each discrete discriminatory act starts a new clock for filing charges alleging that act"—meaning that any claim arising out of an act not raised with an EEO counselor within forty-five days cannot be pursued. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Second, the record does not establish that Plaintiff engaged in protected activity for most of the period in which the alleged conduct occurred. Plaintiff's allegations largely involve internal workplace disagreements and complaints regarding management decisions and supervisory practices. Such ordinary workplace disputes do not constitute protected activity under Title VII.

Third, the chronology of events defeats any causal nexus. Many of the alleged actions Plaintiff identifies occurred before the conduct she now characterizes as protected activity. As a matter of law, actions that precede the alleged protected activity cannot support a retaliation claim.

The only allegation within the limitations period is Plaintiff's October 24, 2023, performance appraisal, in which she received a "Highly Effective" rating rather than "Outstanding." Even as to that claim, Plaintiff cannot establish retaliation because there is no evidence that the rating was causally connected to any protected activity and the undisputed evidence shows that her supervisors were justified in giving her that rating.

Plaintiff now attempts to recast that rating and other routine supervisory interactions as Title VII retaliation. The undisputed evidence forecloses Plaintiff's claim. Plaintiff's alleged "protected activity" is largely comprised of internal workplace complaints and disagreements that did not allege unlawful retaliation and therefore are not protected under Title VII. Even if the Court assumes that certain events qualify as protected activity, Plaintiff still cannot establish causation because the relevant decision makers were not aware of the content of any protected activity at the time of the challenged actions. Plaintiff cannot show that retaliation tainted any personnel action, and she offers no evidence beyond conjecture to bridge that gap. Because no reasonable jury could find for Plaintiff on Count I, Defendant is entitled to summary judgment.

Therefore, the Court should grant summary judgment in its entirety with prejudice.

## II.    SUMMARY OF MATERIAL FACTS[2]

Plaintiff identifies as a female, Cuban, and Caucasian. SOF #1. She has worked at the EEOC since 2009 with her first position as Automation Assistant, and her current position is as an Enforcement Supervisor. SOF #2. This is her first position as a supervisor at the EEOC, and she has held this position since 2020. SOF #4.  Plaintiff's general duties include supervising five investigators. She counsels them, reviews and approves their work, checks requests by attorneys or charging parties, discusses cases, and reviews cause findings. SOF #5.  Plaintiff is responsible for rating her subordinates and admits that she does not always given her subordinates a rating of "Outstanding" in their annual performance appraisal. None of them ever requested to have their ratings changed.  SOF #6.

Ms. Hawthorne is a black female. SOF #9. Ms. Hawthorne began serving as the Miami District Office (MIDO) Director on November 20, 2022. In this role, she is responsible for managing the operations and personnel of the EEOC's Miami District to include the Tampa Field Office and the Suan Juan Local Office. *See* Exh. 8, Declaration of Evangeline Hawthorne at 1 -2.

Plaintiff's Rating of Her Subordinates

In November of 2022, Plaintiff participated on an interview panel as an interviewer where she rated each candidate being interviewed and provided each a score. SOF #15. The score given by Plaintiff to two of the interviewees, Robbie Cedon ("Mr. Cedon") and Maximilian Feige ("Mr. Feige") came into question. SOF #15. Plaintiff testifies that Ms. Hawthorne asked Plaintiff to change Mr. Feige's rating, but Plaintiff refused. SOF #15. There was a one-point difference in the rating of the interviewees which Ms. Hawthorne stated was "too close to call." SOF #16. Due to this "close call," Ms. Hawthorne made inquiries with all the interviewers on the panel, including

---

[2] Pursuant to Southern District of Florida Local Rule 56.1, Defendant has simultaneously filed her Statement of Material Facts in Support of this Motion for Summary Judgment. References to the statement of material facts are referenced as "SOF#_".

Plaintiff, to get their individual thoughts about the interviewees, Mr. Feige and Mr. Cedon to determine a who would be the best candidate. SOF #16.

In FY2021-2022, the Plaintiff rated a subordinate of hers, Edgar Cole ("Mr. Cole"), as "Outstanding" on his evaluation. SOF #17. Plaintiff testified that Ms. Hawthorne's inquiry about Plaintiff assigning an "Outstanding" rating to Mr. Cole was "not right" but provides no reason or example as to why it is not "right." SOF #17. Plaintiff claims that her protected activity is that she spoke out and didn't change her rating like Ms. Hawthorne wanted. SOF #17.

New Point Strategies

In December 2022, the Miami District Office participated in a Climate Survey, conducted by an outside company, New Point Strategies. SOF #11. The New Point Climate Survey did not concern discrimination based on protected characteristics like gender, religion, or national origin or color. SOF #13. Plaintiff and a group of employees met with officials from New Point. *See* Exh. 8 at 4 and 5. Plaintiff testified that while participating in the New Point Climate Survey meeting, she received several calls from Ms. Hawthorne. SOF #12. Ms. Hawthorne was not informed when this New Climate Survey meeting was scheduled with the employees, including Plaintiff. *See* Exh. 8 at 5. Right after the survey meeting, Miguel Escobar did tell Ms. Hawthorne and Roberto Chavez ("Mr. Chavez") that he as well as the Plaintiff attended. SOF #14.

Enforcement Manager

Plaintiff claims that she was dissuaded from applying for an Enforcement Manager position in May of 2023 because of Ms. Hawthorne. SOF #23. Plaintiff testified that she received encouragement from many of her colleagues and superiors to apply, however. SOF #23. Plaintiff believes that if she had applied, she would have gotten the position. SOF #23. But she didn't apply, because she couldn't work "right next to her (Ms. Hawthorne.)" SOF #23. Plaintiff testified that the fact Ms. Hawthorne asked Plaintiff whether or not she was going to apply for the position however, had gave her a "chilling effect." SOF #23. Ms. Hawthorne testified that she was not surprised when the Plaintiff did not apply for the position because she was advised by Miguel Escobar that the Plaintiff was retiring. SOF #23. Thomas Colclough ("Colclough") testified Plaintiff told him she wanted to leave the agency. SOF #23.

Plaintiff's Interaction with Evangeline Hawthorne and Scott Kelley

Plaintiff reports to Mr. Kelley, the Enforcement Manager. Mr. Kelley reports directly to Ms. Hawthorne. SOF #3. Mr. Kelley became the Enforcement Manager in June of 2023.  SOF #3. Plaintiff believes that Mr. Kelley and Ms. Hawthorne used their position to intimidate and scare her but doesn't provide any specific example of how or when. SOF #22. Plaintiff further believes that Mr. Kelley is a "henchman" for Ms. Hawthorne and that she directed Mr. Kelley to retaliate against her. But Plaintiff provides no reasoning, examples, or explanation as to how this alleged retaliation occurred. SOF #22.

Plaintiff's Rating

Plaintiff made complaints about Ms. Hawthorne and Mr. Kelley, and the rating the Plaintiff received in her FY23 evaluation to Mr. Colclough, Director of Field Management Program. SOF #47. This complaint was sent to Mr. Colclough via email on October 30, 2023. SOF #47. Ms. Hawthorne had no knowledge of that complaint until after Mr. Colclough told her about it, but even then, they didn't have a conversation as to the specifics of the complaint. *See* Exh. 8 at 9. Ms. Hawthorne testified that Mr. Colclough never asked her to change Plaintiff's rating. Mr. Colclough testified that he never recommended that Ms. Hawthorne change the Plaintiff's rating but to "consider it." SOF # 47.

These EEOC Supervisory Performance Appraisals consist of four summary rating levels. From lowest to highest, they are "Unacceptable", "Fully Successful", "Highly Effective", and "Outstanding." SOF #30. The description for employees who receive "Highly Effective" is a positive one. SOF #32. Plaintiff received a "Highly Effective" rating, which she takes issue with and believes she should have received "Outstanding." SOF #35.

Plaintiff testifies that in Fiscal Year 2023, she received a rating of Highly Effective on her evaluation, which was one point away from outstanding. SOF #28. Plaintiff blames this rating on Mr. Kelley's short time as her supervisor, just three months. SOF #28. This resulted in a cash award that was less in value than the previous "10 to 12 years." SOF #28. Plaintiff acknowledges that she received an award related to her Highly Effective rating. SOF #28. However, Plaintiff insists that it was not proper because "it was less than the amount I was supposed to get." SOF #28. Plaintiff

contends, without support, that what she would "normally" receive is $3,900, and she received less based on Mr. Kelley's FY 2023 rating, $1,366. SOF #28.

Plaintiff was rated Highly Effective in FY 23. *See* Exhibit 14, EEOC Performance Appraisal FY2023." Mr. Kelley explains his reason in providing his rating by stating: "I evaluate the individual on every line of the performance plan, sentence by sentence. You either did this, or you didn't. You did very well at this, or you did not do very well at this. Because you're outstanding in case management and close a lot of cases does not automatically mean you're outstanding overall." SOF #36. Mr. Kelley testified that Ms. Hawthorne did not influence his rating of the Plaintiff but only reviewed his recommendation after the fact and approved it as the reviewer. SOF #36. Plaintiff has no evidence that Ms. Hawthorne was retaliating against her with the annual review rating that Mr. Kelley assigned her. SOF #36. It should be noted that all the supervisors across the office had similar issues to the Plaintiff and received similar ratings in their evaluations as well. Exh. 2. At 98:7-98-15.

Plaintiff's Testimony in Other EEOC cases

Plaintiff testified as a witness in a deposition for Max Feige on October 4, 2023, and on December 11, 2023. SOF #25. While Plaintiff informed Ms. Hawthorne and Mr. Kelley that she was being interviewed by the Department of Justice, they did not know what case it was or any other details other than the fact that she is a witness in the case. *See* Exh. 8 at 11.

Plaintiff testified that Ms. Hawthorne is borderline insulting, talks down to her, and makes her feel horrible. SOF #16. Plaintiff also testified that after Ms. Hawthorne's "tirade" in 2023, she was discouraged from participating in meetings because she saw no need to do so. SOF #26. Plaintiff believes Ms. Hawthorne and Mr. Kelley try to find ways to make things her fault. SOF #42. Plaintiff believes they do this and other things, like not giving her an outstanding rating, to support terminating her. SOF #42. Plaintiff has no other reason for believing that Ms. Hawthorne or Mr. Kelley retaliated against her. SOF #36.  Plaintiff has no evidence that Ms. Hawthorne was retaliating against her with the performance appraisal Mr. Kelley provided her. SOF #36. Plaintiff has no evidence of any statements or actions Ms. Hawthorne or Mr. Kelley have made that would

indicate discriminatory animus or acts of retaliation against the Plaintiff or because she filed or participated in an EEO complaint. SOF #36.

Plaintiff believes that she should have been selected for an Enforcement Manager position which she never applied for. SOF #23. Plaintiff has never reached out to Mr. Kelley for guidance or advice, even though he recommended she do so in her evaluation. *See* Exh. 2 at 99:20-100:1. Plaintiff testified that she never followed up and corrected issues with the required documentation or on 27 other errors she made." SOF #37.

Mr. Kelley testified that this past fiscal year (FY 25), Plaintiff's performance was "pretty darn good", and he rated her an overall "Outstanding." SOF #34. He further testified that Plaintiff showed "a lot of growth in her performance over the last couple years." SOF #34. As to Plaintiff's performance currently, Mr. Kelley stated "she is still doing a very good job. She is very proactive at managing her people and getting her folks that have some struggles on the right track. SOF #34. She is doing well." SOF #34.

The undisputed material facts make clear that Plaintiff has no evidence of discrimination or retaliation by Ms. Hawthorne or Mr. Kelley. Instead, Plaintiff presents personality conflicts between supervisors and subordinates, reluctance to change and direction, and workplace gripes and disagreements that are not actionable under Title VII.

### III.   ARGUMENT

#### A. Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Facts and disputes that are irrelevant will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328-29 (11th Cir. 2020). A court is not required to resolve disputes in the non-moving

party's favor when that party's version of events is supported by insufficient evidence. *Id*. Moreover, "a mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.*

### B.  *Plaintiff's Duty to Exhaust Administrative Remedies*

"Both federal statues and EEOC regulations require a federal employee to exhaust an administrative process before filing a civil complaint of discrimination in the workplace." *Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006). To begin the exhaustion process, the "complainant must 'initiate contact [with the agency's EEO office] within 45 days of the date of the matter alleged to be discriminatory.'" *Snow*, 440 F.3d at 1265 (citing 29 C.F.R. § 1614.105(a)(1)). *See also Grier v. Sec'y of the Army*, 799 F.2d 721, 724 (11th Cir. 1986) ("Before an aggrieved employee may seek relief through the filing of a civil action in federal court...he or she must first seek relief in the agency that has allegedly engaged in discrimination."). "A federal employee's failure to follow these administrative procedures is grounds for dismissal." *Thomas v. Miami Veterans Medical Center*, 290 Fed. Appx. 317, 318-319 (11th Cir. 2008) (affirming summary judgment of plaintiff's Title VII claim for failure to exhaust administrative remedies) (citing *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999)).

Plaintiff contacted the EEO office on November 3, 2023. *See* Exhibit 10 Final Agency Decision at EEOC Cosculluela_000261. Thus, any alleged retaliatory events would have had to have occurred in the preceding 45 days i.e. September 19, 2023, in order not to be time barred. But almost all of the allegations in Plaintiff's complaint with the exception of her performance rating are much earlier than September 19, 2023, and are therefore time barred. *See* Exhibit 7, Plaintiff's Complaint at 32(a)- (o). Therefore, the only adverse employment action the plaintiff can bring in her retaliation claim is related to her performance rating.

### C.  *Title VII Retaliation*

The Eleventh Circuit has held that § 2000e-16(a)'s prohibition of "any discrimination" also "directly 'bars reprisals against federal employees who file charges of discrimination.'" *Babb II*, 992 F.3d at 1203 (quoting *Porter v. Adams*, 639 F.2d 273, 277-78 (5th Cir. Unit A Mar. 1981)).

That is so because "retaliation for complaining about prohibited forms of discrimination is itself 'discrimination' within the meaning of § 2000e-16(a)." *Id*.

Because retaliation falls within the category "discrimination" under § 2000e-16(a), that means that "[a]ll personnel actions" must be made "free from any" retaliation. So as with traditional  discrimination, if retaliation for engaging in a protected activity under Title VII taints the decision-making process for any personnel action, that violates the federal-sector provision— even if the employer would have made the same decision absent retaliation. *Babb II*, 992 F.3d at 1202 (holding that *Babb I* displaced prior Eleventh Circuit precedent holding that the federal-sector retaliation claims require but-for causation).

To make a *prima facie* case of retaliation, a federal employee must show that (1) she engaged in protected EEO activity; (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. *Terrell,* 2024 U.S. App. LEXIS 9424, at *20 (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)).. In order to establish a causal connection, a plaintiff must show that a decisionmaker was aware of the protected activity and there is a close temporal proximity between this awareness and the adverse action. *See Walton-Horton v. Hyundai of Ala.*, 402 F. App'x 405, 408-09 (11th Cir. 2010). "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression." *Bass v. Bd. of Cnty. Cmm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001).

### a.  Protected activity.

Plaintiff claims that Evangeline Hawthorne and Scott Kelley retaliated against her for engaging in  protected activity, Count 1 of her complaint.  *See* SOF #22.  As stated above, the only timely claim for her retaliation count is her performance evaluation. The others are time barred.

To support her retaliation claim, Plaintiff alleges the following protected activity: (1) participation in the New Point survey focus group meeting in December 2022; (2) not being promoted to a position she never applied for in May of 2022; (3) not changing her ratings assigned to a co-worker on an evaluation in FY2021-2022 and an interview panel in November of 2022; (4)

emails to Thomas Colclough on October 30 and 31, 2023 concerning her 2023 Performance Appraisal and "negative activities" by Mr. Kelley and Ms. Hawthorne on October 30, 2023; *See* Exhibits 6, October 30, 2023, Email to T. Colclough and 9, October 31, 2023, Email to T. Colclough. (5) participating in a deposition in October 2023 and in December 2023. *See* Exhibit 7 at 18-22; (6) and participating as a witness in an EEO case involving a co-worker in September and October 2023. *See* Exhibit 7 at 18-22. As outlined below, this claim fails.

Under Title VII, protected activity is when an employee "'has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (citing 42 U.S.C. §2000e-3(a)). "To prove retaliation under Title VII, the plaintiff must establish he had 'a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Jackson v. Secretary, U.S. Dept. of Transp.*, Case No. 25-10894, 2026 WL 100401, *3 (11th Cir. Jan. 14, 2026) (*citing Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1331 (11th Cir. 2016)). "Unfair treatment, absent discrimination based on race, sex, or national origin is *not* an unlawful employment practice under Title VII." *Id.* (*citing Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995)) (emphasis in original).

In *Jackson*, the Eleventh Circuit affirmed summary judgment for the federal agency on plaintiff's retaliation claim and found that plaintiff's internal grievance complaining of manager's "hostility and confusion within the unit" by "'routinely changing management expectations and directions" was not protected activity. *Id.* at *3. This Court held similarly, stating that a plaintiff's emails referencing "harassment", a "hostile work location" and that defendant's actions "begin to appear biased and where EEOC maybe [sic] applicable" did not refer to "discrimination, harassment, or bias based on a protected characteristic.*" Harris v. Dept. of Children & Families*, Case No. 19-cv-62842-SMITH, 2021 WL 6750969, at fn 3 (S.D. Fla. April 16, 2021) (citing *Hawk v. Atlanta Peach Movers*, 469 F. App'x 783, 786 (11th Cir. 2012) (finding that complaining that employer acted unfairly toward plaintiff does not constitute protected activity if complaint does not suggest that employer was discriminating based on protected group) and *Coutu v. Martin Cnty.*

*Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (holding that an employee did not engage in protected activity where, during a grievance hearing held by the employer, the employee made no allegation and offered no proof of unlawful discrimination but instead contended only that she deserved better treatment)). *See also Birdyshaw v. Dillard's Inc.*, 308 Fed. Appx. 431, 436-437 (11th Cir. 2009) (affirming the finding that employee was not engaged in protected activity when employee's letter concerned harsh treatment by supervisor in relation to work-related dispute and did not allege discrimination on account of protected group).

Most of the incidents of which Plaintiff complains i.e. participation in the survey, not being promoted, not changing the rating and score assigned to co-workers and her emails to T. Colclough are not protected activity since none of them involved complaining about discrimination based on a protected class. The only potential protected activity is Plaintiff's participation in a deposition on October 4 and December 11 of 2023, and serving as a witness in an EEO involving a co-worker in September and October 2023.

The email Plaintiff sent to Mr. Colclough on October 30 and 31, 2023, mentions "negative activities" but there is no mention that the activities are due to alleged protected class discrimination. Instead, it largely concerns Plaintiff's disagreements with her performance appraisal, none of which she attributed to protected class discrimination when she spoke to Colclough.  SOF #47 and *See* Exh. 6 and 9. Thus it was not protected activity. As in *Coutu*, *Jackson*, *Furcron*, *Harris*, *Hawk*, and *Birdyshaw*, the emails and complaint about her evaluation to Colclough does not constitute protected activity under Title VII.

Plaintiff alleges she was asked to change an interview score she assigned to Max Feige and a rating she assigned to Edgar Cole for his performance evaluation. SOF # 15 and 17. Neither of these actions can constitute protected activity since she does not allege that she protested the changing of the score and the rating due to a belief that the request was because of  discrimination based on a protected characteristic.

b.  *Adverse Employment Action*

The only adverse employment action that is not time-barred is Plaintiff's  evaluation which she received on October 22, 2023, since it resulted in a lower award than a higher rating would

have given her. All the other incidents of which Plaintiff complained, such as disagreeing with supervisors' criticism of her work or being questioned about her score and rating of other employees are not adverse employment actions since they would not dissuade an employee from making or supporting a charge of discrimination. They  are ordinary workplace issues.  *See* e.g. Puckett v. :Potter 342 F.Supp.2d 1056, 1068 (M.D. Ala. 2004) (one hour schedule change not adverse); Carter v. Dejoy 2021 WL 4302835 *8 (M.D. Ga. Spet. 21, 2021) (Court lists multiple alleged actions that are not adverse  like being assigned to the wrong location and being required to use a form to document time).

       c.   *Causal link between protected activity and adverse employment action*

Even though Plaintiff's October 2023 performance rating, the only adverse employment action was around the same time as her deposition and serving as a witness in an EEO proceeding, Plaintiff has not shown that Evangeline Hawthorne and Scott Kelly were aware of Plaintiff's testimony. They were only aware that she was attending a deposition in a case. *See* Exh. 8 at 11. Thus, with no knowledge on the part of the alleged retaliators, Plaintiff cannot show a causal link. *See* e.g., D*urr v. Sec'y of the Dep't*, No. 21-12867, 2022 U.S. App. LEXIS 17712, at *7 (11th Cir. June 28, 2022) ("*Durr II*") (finding no causation because plaintiff provided no proof of causation; plaintiff only speculated that retaliation was the reason); *See Martin v. Fin. Asset Mgmt. Sys.*, 959 F.3d 1048, 1054 (11th Cir. 2020) ("'[U]nrebutted evidence that the decision[]maker did not have knowledge' of the employee's protected conduct means that 'temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection.' After all, a 'decision[]maker cannot have been motivated to retaliate by something unknown to him,' whether or not the two events happened close in time.") (*quoting Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). Thus Plaintiff's retaliation claim fails.

       d.  *Defendant Had Legitimate Reasons for Plaintiff's Rating and Plaintiff Fails to Demonstrate a Retaliatory bias.*

Plaintiff disagrees with her performance rating however, Scott Kelley articulated good reasons for her rating. He evaluated the Plaintiff on every line of her performance plan and cited specific issues with Plaintiff's performance: issues with case files being incomplete, PHP assessments not

being properly done, incomplete work product being sent out, and lack of engagement with her direct supervisor (Mr. Kelley) in making critical decisions, being unprepared at management meetings, not being able to answer questions, lack of engagement with her peers and supervisors overall. SOF#36. All the supervisors received similar marks in similar areas because the problems were across the office. *See* Exh. 2 at 98:7-98:15. So, far from showing that plaintiff's rating was due to retaliation, the evidence in this case shows that the rating was based on her work performance just like the similar ratings the other supervisors got for similar issues. *Id*.

### D.  Title VII Hostile Work Environment

To state a claim for hostile work environment, a plaintiff must establish that (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was "sufficiently severe or pervasive" to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that her employer was responsible under either a theory of vicarious or direct liability. *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc), *See also Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019)). *Palmer v. McDonald*, 624 F. App'x 699, 703 (11th Cir. 2015) (citing *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014)).

The fourth element—whether the harassment was sufficiently severe or pervasive—has a subjective component and an objective component.  To satisfy this element, two things must be true. *One*, the plaintiff must "*subjectively* perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment[.]" *Palmer*, 624 F. App'x at 703 (emphasis added). *Two*, she must show "that the work environment was . . . *objectively* hostile . . . from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Ibid.* (emphasis added) (citing *Adams*, 754 F.3d at 1249).

In determining whether the harassment was *objectively* severe, courts consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating (or whether it constituted a mere offensive utterance); and (4) whether the conduct unreasonably interferes with the employee's job performance. *See Mendoza v. Borden Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc)) "No single factor is controlling, and a court must consider the totality of the circumstances." *United States v. Bartow Cnty.*, 2023 U.S. Dist. LEXIS 37130, 2023 WL 2344209, at *6 (N.D. Ga. Mar. 3, 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

### i.      *Plaintiff has not properly plead a claim for a hostile work environment.*

Plaintiff has not properly plead a claim for a hostile work environment. In Asante v. New Rez LLC, 2019 U.S. Dist. LEXIS 234920, the Court held "To properly plead a claim, a plaintiff must begin by following Rules 8 and 10 of the Federal Rules of Civil Procedure." *Finley v. PNC Bank, N.A.*, No. 1:14-CV-995-ODE, 2014 U.S. Dist. LEXIS 189230, 2014 WL 12115920, at *3 (N.D. Ga. Oct. 22, 2014). Rule 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Interpreting this requirement, the Supreme Court has explained that even though the factual allegations in a complaint need not be detailed, the plaintiff must provide more than just "than labels and conclusions" to support his right to relief; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). More specifically:

> "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations and internal quotation marks omitted). Likewise, Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Additionally, the Court in Sheppard v. IBM, 2020 U.S. Dist. LEXIS 256606 held that the Federal Rules of Civil Procedure also explicitly state that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b) (emphasis added). "The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . " T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n. 14 (11th Cir. 1985).

In the instant case, Plaintiff does not have a hostile work environment count in her federal court complaint despite using the word harassment at various times in the complaint. Thus, her claim in this lawsuit should only be construed as a retaliation claim, which Defendant has discussed above. Nevertheless, in an abundance of caution, Defendant also establishes more fully below that Plaintiff has not established a hostile work environment.

### ii.     *Plaintiff Has Not Shown a Hostile Work Environment*

In order to make a claim for hostile work environment, Plaintiff must show (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was "sufficiently severe or pervasive" to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that her employer was responsible under either a theory of vicarious or direct liability. The allegations Plaintiff makes do not rise to a claim of hostile work environment. Plaintiff alleges she was subjected to unwelcome harassment by Ms. Hawthorne and

Mr. Kelley by way of "insulting language," not rating her performance as outstanding, not promoting her to a position she never applied for, and not accepting her first round of submitted work. *See* SOF #26. None of these actions are of the type normally found by Courts to be a hostile work environment.

As the Court in Oncale noted, a Court must consider the totality of circumstances, keeping in mind that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 81-82, 118 S. Ct. 998, 1003, 140 L.Ed.2d 201 (1998). A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 1126 L. Ed. 2d 295 (1993). To be actionable, this behavior must result in both an environment "that a reasonable person would find hostile or abusive" and an environment that the victim "subjectively perceive [s] . . . to be abusive." Id. at 21-22. The employer will be strictly liable for the hostile environment if the supervisor takes tangible employment action against the victim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2292-93, 141 L. Ed. 2d 662 (1998).

Plaintiff cannot show that the work environment was objectively hostile from the perspective of a reasonable person because: having to correct your work due to a supervisor's comments is not objectively hostile. Neither is, receiving two evaluations that do not contain perfect ratings, not receiving a promotion for which the employee did not apply nor being asked about whether she intended to apply.

Accordingly, Plaintiff's hostile work environment claim, to the extent she intended to assert one, fails.

### E. *Plaintiff is Not Entitled to Compensatory or Injunctive Relief for Her Claims.*

Even if Plaintiff could survive summary judgment with a showing that retaliatory animus tainted any adverse employment action (which she cannot), she could not meet the greater burden of showing but-for causation that would entitle her to full relief if she were to prevail at trial on the issue of liability. "To obtain full relief, including 'hiring, reinstatement, and compensatory damages, a plaintiff still must show that discrimination (retaliation) was the 'but-for cause of the challenged employment decision.'" *Ford v. DeJoy*, 4:20-CV-00778, 2021 WL 6113657, at *6 (N.D. Ala. Dec. 27, 2021) (quoting *Babb I*, 140 S. Ct. at 1171). This is because "relief must redress" the precise injury that the alleged discrimination "inflicted." *Buckley v. Sec'y of Army*, 97 F.4th 784, 795 (11th Cir. 2024) (citing *Babb II*, 992 F.3d at 1205 n.8).

Where a plaintiff only can prove that discrimination (retaliation) was the but-for cause of differential treatment, but not the but-for cause of the adverse employment action, the plaintiff is limited to "injunctive or other forward-looking relief." *Babb I*, 140 S. Ct. at 1178. Here, Plaintiff can only speculate that her performance ratings were tied to her participation as a witness in civil litigation, and that it was not due to Kelley's legitimate assessment of her work. But even if her participation played a role but was not the but-for cause of her rating, Plaintiff would only be entitled to injunctive relief.

### F. CONCLUSION

Plaintiff has not, and cannot, meet her burden of establishing that her rating was tainted by retaliatory animus, much less that such alleged animus was the "but-for" cause. There is no evidence of retaliation, and Plaintiff's allegations of the same amount to nothing more than rank speculation. The Court should enter summary judgment in favor of the EEOC.