**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1: 25-cv-20423-CIV-KMM**

**MARISSA A. COSCULLUELA**,

      Plaintiff,

v.

**ANDREA LUCAS, et. al.,**

      Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMNET [DE 70] AND MEMORANDUM OF LAW IN OPPOSITION**

Pursuant to the Southern District of Florida Local Rule 56.1, the Federal Rules of Civil Procedure, as well as, the Inherent and Discretionary Powers of this Honorable Court, Plaintiff respectfully responds to Defendant's Motion for Summary Judgment [DE 70] ("Motion") and confirms that genuine issues of material facts exist to be tried herein.  In support herein, Plaintiff states as follows:

**I.**      **INTRODUCTION**

In describing its mission statement, Defendant claims that,

> "[T]he core mission of the U.S. Equal Employment Opportunity Commission (EEOC or the Commission) is to prevent and remedy discrimination in America's workplaces and advance equal employment opportunity for all. As an integral part of that mission, the EEOC must protect our own employees from unlawful discrimination, harassment, and retaliation."

The crux of this matter involves facts that demonstrate this statement does *not* apply to the EEOC's own employees: those engaging in protected activities. The irony is glaring and undeniable.

The case before the Court is not the usual "disappointed employee" discrimination case. The record reveals one[1] of the most egregious examples of manipulation, bias, and disregard for established federal discrimination and retaliation policies that this Court is likely to see.  Plaintiff **MARISSA A. COSCULLUELA** ("Plaintiff" and/or "Ms. Cosculluela") is a 17-year career employee of the EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC" and/or "Defendant") with a record of outstanding performance, deep institutional knowledge, and direct,

---

[1] This matter is "one" and not "the" due to the fact that this matter, unfortunately, is a recurring theme with Defendant. (*See Kandan v. Lucas*, No. 24-civ-2089 (E.Dist.Lou. Sept. 22, 2025).

successful leadership. (RSMF ¶¶ 1, 2, 8).  Throughout that time, Ms. Coculluela has been promoted from an assistant position to the Enforcement Supervisor of the EEOC's Miami District Office ("MIDO"). (RSMF ¶¶ 1, 2).  In her Complaint [DE 1], she alleges one count for hostile work environment retaliation in violation of Title VII for engaging in protected activity(ies).

Despite Defendant's assertions for summary judgment, the evidence presented clearly indicates a pattern of discriminatory and retaliatory actions by EEOC management. This pattern is supported by specific incidents that consistently spanned over months and that were used to justify reduced ratings on her Fiscal Year ("FY") Performance Evaluations for 2023 and 2024. In part, Plaintiff engaged in multiple examples of protected activity that included refusing to change a minority male subordinate's FY evaluation score who had previously engaged in protected activity (RSMF ¶¶ 17, 35, 50, 115); refusing to change her score of an interviewee who engaged in protected activity and worked for the Union (RSMF ¶¶ 15, 35, 50, 115); participating in a confidential climate assessment survey related to MIDO harassment/retaliation and complaining of Management (RSMF ¶¶ 13, 14, 35, 115); contacting headquarters to complain about retaliation (RSMF ¶¶ 1114, 15, 117); filing an complaint with headquarters (RSMF ¶¶ 45, 116) and testifying as a witness in a lawsuit against her supervisor. (RSMF ¶¶ 25, 116).

Almost immediately after engaging in the aforementioned activities, Ms. Cosculluela was subjected to materially adverse employment actions that negatively affected her employment.  The actions included, but were not limited to, approached and accused by her supervisor for engaging in a confidential climate assessment survey (RSMF ¶¶ 13, 14, 35, 115); having her work over scrutinized (RSMF ¶¶ 13, 18, 123, 129); Plaintiff's work and unjustified reprimands involving uncorroborated complaints of his work product [RSMF ¶¶ 113,114,115,124125,127]; character assassination and targeted harassment related to work load (RSMF ¶¶ 24, 35, 116, 123, 129); comments aimed at discouraging application for management positions (RSMF ¶¶ 23, 116); refusal to approve adjudication in matters that increased Ms. Cosculluela's aged case load (RSMF ¶¶ 18-22, 116), which was ultimately used to justify a reduced rating for her FY 2023 Evaluation that decreased her bonus that year. (RSMF ¶¶ 2, 28-38, 60, 116). Ms. Cosculluela continued to suffer retaliation in the form of threats related to her FY 2024 evaluation and being placed on a Performance Improvement Plan ("PIP") (RSMF ¶¶ 28, 116) and continued scrutiny of matters (RSMF ¶¶ 22, 35, 116) that, ultimately, resulted in Ms. Cosculluela receiving a second reduced rating for her FY 2024 Evaluation.  (RSMF ¶¶ 28, 35, 112).

Collectively, these incidents demonstrate a persistent discriminatory animus and retaliatory behavior by her supervisors. Put simply, the facts, testimony and materials outlined herein present a convincing mosaic of circumstantial evidence sufficient for a reasonable jury to conclude that Ms. Cosculluela's engagement in protected activities "tainted" and/or played "*some* role" in the process in reaching an adverse employment action against her in violation of Title VII.

## II. STATEMENT OF RELEVANT FACTS[2]

In her Complaint [DE 1, para. 23], Ms. Cosculluela outlines a mosaic of circumstantial evidence that would allows a jury to infer intentional discrimination and retaliation by Director Hawthorne and Defendant.

### A. Relevant Facts.

### 1. Retaliation

Ms. Cosculluela alleged that she suffered adverse employment action(s) by Director Hawthorne and Mr. Kelley when she engaged in multiple examples of protected activity.

#### a. Protected Activity.

##### i.) Refusal to Change Mr. Cole's Evaluation—October 2022

On October 1, 2022, Ms. Cosculluela was approached by Director Hawthorne to change Mr. Cole's score. (RSMF ¶¶ 17, 35, 50, 115). Mr. Cole had previously worked at TAMPO under Director Hawthorne and had transferred to MIDO after filing a complaint against Director Hawthorne for discrimination based, in part, on race (black), gender (male) and retaliation. (RSMF ¶¶ 17, 50, 115). Plaintiff refused to change Mr. Cole's rating. (RSMF ¶¶ 17, 35, 50, 115).

##### ii.) Contact Management Regarding Mr. Cole's Evaluation—November 2022

In November 2022, Ms. Cosculluela contacted Andrea Justice, from the Agency of Chief Mediation Office, regarding Director Hawthorne's request to change Mr. Cole's evaluation and fears of retaliation against Mr. Cole and herself by the Director. (RSMF ¶¶ 122).

##### iii.) Refusal to Change Rating of Interviewees—November 2022

Ms. Cosculluela was approached by Director Hawthorne to change the score she, as an interview panelist, given to Mr. Feige in his interview for the MIDO Enforcement Manager Position. (RSMF ¶¶ 15, 115). She refused to change Mr. Feige's interview score. (RSMF ¶¶ 15, 115). Shortly thereafter, Director Hawthorne's retaliation began. (RSMF ¶¶ 15, 35, 50, 115).

##### iv.) Participation in the NewPoint Survey—December 2022

---

[2] All citations to numbered exhibits (e.g., Ex. 1) are to Defs' SMF [DE 69] ("SMF") or Motion [DE 70]. All citations to lettered exhibits (e.g., Ex. A) are to Plaintiff's RSMF ("RSMF") attached to this statement of facts.

Ms. Cosculluela engaged in the NewPoint Survey and complained about harassment and retaliation against employees, including herself. (RSMF ¶¶ 13, 14, 35, 115).

### v.) Contacting Management—December 2022

On December 20, 2022, Ms. Cosculluela met with the management and discussed her complaint against Director Hawthorne and the incident during the NewPoint Survey and the management official confirmed she would address the matter with Mr. Colclough at headquarters. (RSMF ¶¶ 115, 117). On December 21, 2022, Ms. Cosculluela sent a formal writing complaining to Mr. Colclough at headquarters about the NewPoint incident.  (RSMF ¶¶ 115, 117).

### vi.) Complaint to HQ Management—December 2022

On December 21, 2022, Ms. Cosculluela sent a formal complaint in writing to Mr. Colclough at headquarters about the NewPoint incident.  (RSMF ¶¶ 115, 117).

### vii.) Complaint with OEO—February 2023

Ms. Cosculluela filed a complaint for hostile work environment retaliation. (RSMF ¶¶ 46).

### viii.) Applying for the Enforcement Manager Position—May 2023

Ms. Cosculluela was going to apply for the MIDO Enforcement Manager position, which she was "next in line" for based on her experience and seniority. (RSMF ¶¶ 24, 116).

### ix.) Complaint during Technical Assistance ("TA") Visit—July 2023

During a TA visit that took place on July 13, 2023, Ms. Cosculluela complained about DG and the issues she was experiencing in the office including conduct by DH against her including issues with her and other employees.  (RSMF ¶¶ 130).

### x.) Complaint to HQ Management—October 2023

Ms. Cosculluela contacted Mr. Colclough and Ms. Thomas, again, to complain about DH and per FY 2023 Evaluation and the retaliation based on hostile work environment. (RSMF ¶¶ 45, 116).  Mr. Colclough agreed that her rating was wrong.  (RSMF ¶¶ 114).

### xi.) Provided Testimony in Mr. Feige's Lawsuit—October to December 2023

Between October and December 2023, Ms. Cosculluela was interviewed by the DOJ and attended a deposition in Mr. Feige's federal court case.  (RSMF ¶¶ 25, 116).

### b. Mistreatment That Would Have Dissuaded a Reasonable Worker from Making a Charge of Discrimination

Ms. Cosculluela commenced experiencing retaliation immediately after engaging in the aforementioned protective activity.

### i.) Comments from Director Hawthorne—December 2022

4

Director Hawthorne was aware that Ms. Cosculluela and other employees were participating in the survey as she was contacting employees during the survey. (RSMF ¶¶ 13, 35, 14). Moreover, Director Hawthorne actually admitted to Ms. Cosculluela and other employees who participated in the NewPoint survey, "[I] know you guys are in that meeting!" (RSMF ¶¶ 13, 14, 35, 115). Director Hawthorne was aware of the NewPoint Survey because Mr. Colclough met with her to discuss the concerns about the survey with her. (RSMF ¶¶ 92-97). As a result of the NewPoint survey, headquarters recommended that Director Hawthorne required "coaching" as a manager and instructed her to engage in same. (RSMF ¶¶ 92-97). Ms. Cosculluela complained to a representative from NewPoint about Director's Hawthorne's conduct and the concern that she contacted her notwithstanding the alleged confidentiality of same. (RSMF ¶¶ 14, 115, 117).

### ii.) <u>Plaintiff's Cases Came Under Heightened Scrutiny</u>—December 2022

On December 6, 2022, the same day of the NewPoint Survey, DH began subjecting every case Ms. Cosculluela submitted for approval to criticism and questioned her ability to supervise by asking experienced investigators to rewrite their work. (RSMF ¶¶ 13, 116, 123). DH returned work and failed to approve findings based on an alleged "failure to understand." (RSMF ¶¶ 13, 18, 123). DH refused to adjudicate a case that took over 2 years to investigate due to a "[G]ut feeling," there were other witnesses, which, after 3 months, were never found. (RSMF ¶¶ 13, 18, 123, 129).

### iii.) <u>Discrediting Character and Nitpicking Work</u>—February 2023

DH refused to approve cases from Ms. Cosculluela's unit for unjustified reasons which caused unnecessary delays. (RSMF ¶¶ 24, 35, 116, 123, 129).

### iv.) <u>Discrediting Character and Nitpicking Work</u>—February 2023

DH made multiple comments discrediting Ms. Cosculluela in public including questioning if Plaintiff was, "[A] good manager." (RSMF ¶¶ 24, 35, 116, 123).

### v.) <u>Discourage from Applying for Enforcement Manager Position</u>—May 2023

In May 2023, Director Hawthorne intimidated Plaintiff by making comments to her about the position and created a "chilling effect" that discouraged her from applying for the MIDO Enforcement Manager position. (RSMF ¶¶ 23, 116).

### vi.) <u>Mr. Kelley's Excessive Scrutiny of Work</u>—June 2023

In June 2023, Director Hawthorne, individually and through Mr. Kelley as the Enforcement Manager, overcriticized Ms. Cosculluela's work. (RSMF ¶¶ 22, 35, 116).

### vii.) <u>Management Meeting</u>—August 2023

During the management meeting attended by 20 supervisors, Director Hawthorne cut Ms. Cosculluela off, dismissing her and engaged in a screaming tirade yelling at her for 20 minutes causing her and others to lower their hands and not participate. (RSMF ¶¶ 26, 27, 116).

### viii.)   Continued Scrutiny of Work—September 2023

Between September and October 2023, Director Hawthorne refused to approve Ms. Cosculluela's cases for cause findings that resulted in delays in her aging reports.  (RSMF ¶¶ 18-22, 116).  Director Hawthorne continued to deny and return cases for approval which, ultimately, delayed Ms. Cosculluela's work and adversely affected her aging report.  (RSMF ¶¶ 18-22, 116).

### ix.)   FY 2023 Performance Evaluation—October 2023

On October 24, 2023, Director Hawthorne issued Ms. Cosculluela a "[H]ighly effective" rating instead of an "[O]utstanding."  (RSMF ¶¶ 2, 28-38, 60, 116).

### x.)   Pre-Determined Evaluation Rating Months in Advance—January 2024

Mr. Kelley confirmed in January 2024, that Plaintiff would be receiving a "[F]ully successful," the second to lowest rating 8-9 months before the rating was to be issued. (RSMF ¶¶ 28, 116).  This inventory was used to lower Plaintiff's FY 2024 Performance review and almost place her on a PIP. (RSMF ¶¶ 28, 116).

### xi.)   Transferred Investigators with High Aged Inventory-March 2024.

DH and Mr. Kelley transferred to Plaintiff the most problematic investigators that had the most aged cases.  (RSMF ¶¶ 28, 41, 42,116).

### xii.)   Alleged "Errors" in 27 Matters—May 2024

Ms. Cosculluela worked on 27 matters with the DOJ that were scrutinized and returned, unnecessarily that resulted in delays. (RSMF ¶¶ 22, 35, 116). She was asked to redraft letters that DH approved the month before.  (RSMF ¶¶ 22, 35, 116).

### xiii.)   Continued Scrutiny of Unit's Cases—June 2024

Every cause determination submitted by Ms. Cosculluela's team for approval to Mr. Kelley and DH is returned for corrections or to rewrite it entirely. (RSMF ¶¶ 35, 116).

### xiv.)   Reduced FY 2024 Evaluation—October 2024

For FY 2024, Ms. Cosculluela received a "[F]ully successful" rating and almost placed on a PIP.  (RSMF ¶¶ 28, 35, 112).

The undisputed material facts make it clear that Ms. Cosculluela established that the EEOC created a work environment that well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination and that environment rose to the level of a personnel action. Therefore, summary judgment is inappropriate.

### III.   MEMORANDUM OF LAW

#### A.  Standards

#### 1.  Summary Judgment

The moving party in a motion for summary judgment must bear the burden of demonstrating that there is no genuine dispute as to any material fact in the case. Fed. R. Civ. P. 56(a); Celotex Corp v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997); Baldwin v. Sec'y of Veteran Affairs, 2023 WL 3961405 at *2 (11th Cir. June 13, 2023) (quoting Baxter v. Roberts, 54 F.4th 1241, 1253 (11th Cir. 2022)) ("No genuine issue of material fact exists unless a 'reasonable jury could return a verdict in favor of the nonmoving party.") Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. Anderson, 477 U.S. at 247-51, 106 S. Ct. 2510-11. All facts and reasonable inferences must be viewed in the light most favorable to the non-moving party. *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005); *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). A plaintiff will always survive summary judgment if she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. *Smith v. Lockheed-Martin Corporation*, 644 F.3d 1321, 1328 (11th Cir. 2011).

"[T]he ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 941 (11th Cir. 2023) (alteration added).  In the absence of direct evidence, the relevant inquiry on summary judgment thus becomes whether there is "enough circumstantial evidence to raise a reasonable inference of intentional discrimination." *Id*. at 947.

#### 2.  Exhaustion of Remedies in Hostile Work Environment Matters.

As long as one of the acts that created an allegedly hostile work environment occurred within requisite statutory timeframe of the employee contacting his or her Equal Employment Opportunity (EEO) counselor, other acts that are part of the same actionable hostile work

environment practice remain actionable with respect to that claim, even if they occurred outside of the time period. *Civil Rights Act of 1964* § 706, 42 U.S.C.A. § 2000e-5(e)(1); 29 C.F.R. § 1614.105(a)(1).

A hostile work environment claim may exist "even if the mistreatment does not rise to the level of a tangible employment action[,]" so long as "the mistreatment is sufficiently severe or pervasive that it can be said to alter the terms, conditions, or privileges of employment." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020). "Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a[] Charge of Discrimination in a timely fashion." *Smiley v. Ala. Dep't of Transp.*, 778 F. Supp. 2d 1283, 1294 (M.D. Ala. 2011); *see also Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003) ("[A] hostile work environment, although comprised of a series of separate acts, constitutes one 'unlawful employment practice,' and so long as one act contributing to the claim occurs within the filing period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" (*quoting National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (holding a hostile work environment claims actionable, even though some of the acts establishing the claim occurred outside that limitations period). The continuing violations doctrine permits an extension of the statutory limitations period where the discriminatory acts constitute a "continuing violation." *See Morgan*, 536 U.S. at 120; *Abram v. Fulton Cnty. Gov't*, 598 F. App'x. 672, 674-75 (11th Cir. 2015). This court has applied *Morgan's* teaching to claims under § 1981 as well as Title VII. S*hields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir.2002). In these claims, employment actions, even if not adverse, can be relevant to the movants overall claims in light of her alleged continuous and cumulative experiences of discrimination, retaliation and harassment. *See Monaghan*, 955 F.3d at 861.

This exhaustion is not properly raised on a motion for summary judgment but rather "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). A hostile work environment claim only requires one exhausted predicate event. *See Smiley*, 778 F. Supp. 2d at 1294.

### 3.  Discrimination Claims Under Title VII.

Title VII prohibits employers from "[D]iscriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin" 42 U.S.C § 2000e-2(a)(1). According to § 2000e-16(a)'s plain language, a plaintiff seeking to bring a federal-sector Title VII claim need only show that the challenged personnel action was not free of any discrimination based on national origin or gender (i.e., that the decision was "tainted"). Once a plaintiff shows he was subject to a personnel action, he only needs to prove that it was not free of any discrimination to establish liability, according to the plain language of § 2000e-16(a). *Babb v. Wilkie*, 206 L. Ed. 2d 432, 140 S. Ct. 1168, 1176 (2020) ("*Babb I*"). If there is a taint of discrimination, then Title VII imposes liability. *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1203-05 (11th Cir. 2021) ("*Babb II*") (holding that "[[I]f a decision is not "made free from any discrimination based on" that which § 2000e-16(a) protects, then an employer may be held liable for that discrimination regardless of whether that discrimination shifted the ultimate outcome. So long as the protected characteristic is "the but-for cause of *differential treatment*," then it doesn't matter (for purposes of liability) that the protected characteristic isn't "a but-for cause of *the ultimate decision*"). *Malone v. United States Attorney General*, 858 Fed.Appx. 296 (11th Cir. 2021) (explaining that, after *Babb I* and *Babb II*, a plaintiff need only show that discrimination was a factor in the challenged employment action to state a cognizable claim under the federal-sector provision of Title VII).

A plaintiff may prove her case by alleging a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023). Thus, the inability to satisfy individual elements of McDonnell Douglas "does not necessarily doom the plaintiff's case." *Id*. "Indeed, the plaintiff will always survive judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id*. "A federal-sector employee must show only that a protected characteristic played any part in her employer's process in reaching an adverse employment decision." B*uckley v. Sec'y of Army*, 97 F.4th 784, 794 (11th Cir. 2024). More to the point, the Eleventh Circuit has concluded that the *McDonnell Douglas* framework simply does not apply to federal-sector Title VII claims. *See id*. at 794–95.

"[A] plaintiff in a Title VII case can establish a claim of intentional discrimination by presenting either direct or circumstantial evidence." *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010). Cf. Palm Partners, LLC v. City of Oakland Park, 102 F. Supp. 3d 1334, 1342 n.3 (S.D. Fla. 2015) ("Proof of discriminatory motive . . . can in some situations be inferred

from the mere fact of differences in treatment."). Moreover, this evidence creates a "convincing mosaic" of circumstantial evidence that is sufficient "for a reasonable factfinder to infer intentional discrimination in an employment action." *Tynes*, 88 F.4th at 946. What matters at the summary judgment stage is that the plaintiff "point[ed] to some behavior . . . that could allow a reasonable jury to infer that race factored into [Defendant's] decision-making process." *Buckley*, 97 F.4th at 795 (alterations added). "That leaves the question as to" Defendant's actual motive. *Id*. "And that presents a jury question." *Id*.

The Eleventh Circuit has also been clear that "failure to produce a comparator does not necessarily doom the plaintiff's case," so long as the plaintiff survives summary judgment under the applicable standard: here, either by showing that her race or sex played a role in Defendant's actions or presenting a convincing mosaic of circumstantial evidence. *Lewis*, 918 F.3d at 1217.

### 4. Retaliation Under Title VII.

Generally, "[t]o make a prima facie case of retaliation, [a plaintiff] must show that she (1) engaged in protected EEO activity and (2) suffered an adverse employment action, and (3) she must establish a causal link between the protected activity and the adverse action." *Terrell*, 98 F.4th at 1355 (alterations added; citation omitted). Relevant here, plaintiffs may also bring what the Eleventh Circuit has described as "a retaliatory-hostile-work-environment claim[,]" which "is somewhat of a hybrid of a traditional . . . hostile-work-environment claim and a traditional retaliation claim." *Buckley*, 97 F.4th at 799. To sustain such a claim, the plaintiff must show that, as retaliation, "her employer created or tolerated a work environment that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination and that environment rose to the level of a personnel action," also known as the "retaliation standard." *Id. citing, Babb II,* 992 F.3d at 1207.

So just as with a case of discrimination based on age, national origin, or race, to make out a case of retaliation under Title VII or the ADEA, a federal employee need not show that retaliation was the but-for reason for the employer's ultimate decision. *See Buckley*, 97 F.4th at 798. Rather, it's enough to establish that retaliation somehow figured into the process that led to the final decision. *See Id.* Therefore, to state a claim for retaliatory hostile work environment, a federal-sector plaintiff must establish that, to retaliate against her for engaging in protected Title VII activity, her employer created or tolerated a work environment that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and that environment

rose to the level of a "personnel action[ ]." *Babb II*, 992 F.3d at 1207–09; *Buckley v. Sec'y of Army*, 97 F.4th at 799.

While retaliation claims also require that an employment action be "materially adverse," in the retaliation context this means that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Adversity is measured by the "reactions of a reasonable employee" and "will often depend upon the particular circumstances." *Id*. at 68–69. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. at 67.

## B. Arguments

### 1. Exhaustion of Remedies Does Not Apply in Hostile Work Environment Matters.

Generally, Defendant argues that Ms. Cosculluela's claims fails because she did not exhaust the administrative process prior to filing suit (See [DE 70], pgs. 10).  Defendant's Arguments are, "[B]oth too early and too late." (*citing*, *Harper v. Vilsack*, No. 23-22590-CIV, Order, at 7 (S.D. Fla. Jul. 26, 2024).

Herein, Ms. Cosculluela's claim is a hostile work environment retaliation. (RSMF ¶¶ 46). As such, she can raise and rely on all actions — at least in the context of his hostile work environment claim.  *See Monaghan*, 955 F.3d at 861.  Second, the exhaustion of administrative remedies is not properly raised on a motion for summary judgment but rather "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008).

In light of the foregoing, preventing Ms. Cosculluela from raising all unexhausted actions when bringing his hostile work environment retaliation claim is inappropriate and Defendant's Motion should be denied.

### 2. The Evidence Would Allow A Reasonable Jury to Find that Retaliation "Played *any* Part" in the EEOC's decision-making Process in the Multiple Personnel Actions Taken Against Ms. Cosculluela.

Defendant's legal analysis for establishing a retaliation claim is not exclusive. (See [DE 70], pgs. 10).  Although a retaliation claim can be established by showing a *prima facie* case, a plaintiff is not limited to this route alone.  Ms. Cosculluela may also bring a hostile work environment retaliation claim she must show that, as retaliation, "her employer created or tolerated a work environment that well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination and that environment rose to the level of a personnel action." *Buckley*, 97 F.4th at 798.

Defendant argues that its Motion should be granted because, Mr. Cosculluela cannot establish that she engaged in a "protected activity." (See [DE 40] at 12). Defendant is mistaken. Indeed, the Court has established that, what matters at the summary judgment stage is that the plaintiff "point[ed] to some behavior . . . that could allow a reasonable jury to infer that engagement in a protected activity factored into [Defendant's] decision-making process." *Buckley*, 97 F.4th at 795. As such, Defendant's argument fails.

Herein, Ms. Cosculluela has submitted evidence that establishes that her engagement in multiple examples of protective activity "played *any* part" in the alleged adverse employment actions. Despite the existence of multiple examples outlined herein, Defendant strategically chooses to focus on a few while ignoring others. The evidence establishes a different story.

### a. <u>Work Environment Rising to the Level of Personnel Action</u>.

Indeed, Ms. Cosculluela established that between October and December 2022, she engaged in protected activity.

### i. <u>October 2022 through January 2023</u>.

Specifically, she refused to change Mr. Cole's, a Black male who filed prior EEO claims, FY 2022 evaluation score despite being approached by Director Hawthorne and complained to management about the incident. (RSMF ¶¶ 17, 35, 50, 115, 122). A month later, Director Hawthrone questioned her scoring of the Mr. Feige, an employee who filed an EEO complaint against Director Hawthorne, during an interview which Ms. Cosculluela refused to change, again. (RSMF ¶¶ 15, 35, 50, 115). Shortly thereafter, Ms. Cosculluela engaged in a NewPoint survey and complained about Director Hawthorne, specifically. (RSMF ¶¶ 13, 14, 35, 115). Approximately 60 days after she was first approached by Director Hawthorne and *the same day* she engaged in the NewPoint survey, Ms. Cosculluela began experiencing retaliation. Director Hawthorne called several times to interrupt her session and then later questioned the meeting and her participation. (RSMF ¶¶ 13, 14, 35, 115). This was an event Director Hawthorne was aware of. (RSMF ¶¶ 92-97). Later that day and spanning months later, Director Hawthorne began scrutinizing Ms. Cosculluela's work by delaying approval of matters for baseless reasons. (RSMF ¶¶ 13, 116, 123, 129). Director Hawthorne would then

Therefore, construing those facts in Ms. Cosculluela's favor, she engaged in statutorily protected activity when she refused to change Mr. Cole's evaluation, Mr. Feige's score and engaged in the NewPoint Survey before Director Hawthorne began scrutinizing and delaying her work causing delays in her case aging reports.  This fact is critical because the aged cases were ultimately used to fuel her reduced FY 2023 evaluation in October 2023.

    **ii.**        **February 2023 through June 2023**.

Commencing in February 2023, Ms. Cosculluela filed a complaint for hostile work environment. (RSMF ¶¶ 46) and showed interest in applying for the Enforcement manager position at MIDO, which she was "next in line" for.  (RSMF ¶¶ 24, 116).  During that time, Director Hawthorne continued to scrutinize her work which would cause delays in the adjudication of her cases and affect her aging reports. (RSMF ¶¶ 24, 35, 116, 123, 129).  At that time, Director Hawthorne made comments in public discrediting Ms. Cosculluela by stating, "[I] always heard Marissa was a good manager, I don't see it!"  (RSMF ¶¶ 24, 35, 116, 123).  In May 2023, Ms. Cosculluela was approached by Director Hawthorne who made comments to her about her applying for the Enforcement Manager position that created a "chilling effect" and discouraged her from applying.  (RSMF ¶¶ 23, 116).  In June 2023, Mr. Kelley, who was handpicked by Director Hawthorne for the position and served as her "henchmen," commenced scrutinizing Ms. Cosculluela's work even more. (RSMF ¶¶ 22, 23, 35, 116).

Therefore, construing those facts in Ms. Cosculluela's favor, she engaged in statutorily protected activity when she, in addition to the refusals outlined above, she filed a complaint and showed interest in the management position before Director Hawthorne continued scrutinizing and delaying her work causing delays in her case aging reports.  Again, this fact is critical because the aged cases were ultimately used to fuel her reduced FY 2023 evaluation in October 2023.

    **iii.**      **July 2023 through October 2023**.

In July 2023, Ms. Cosculluela complained about Director Hawthorne during a TA visit. (RSMF ¶¶ 130).  The person Ms. Cosculluela complained to was friends with Director Hawthorne and the person she replaced Mr. Chavez on the interview panel for the Enforcement Manager position that Mr. Kelley was ultimately selected for.  (RSMF ¶¶ 130-135).  Approximately thirty days thereafter, Ms. Cosculluela was chastised, yelled at and demeaned in front of 20 other employees by Director Hawthorne during a management meeting.  (RSMF ¶¶ 26, 27, 116).  This was the same meeting Director Hawthorne admitted to stating in the meeting that she did not trust

Mr. Feige because of his Union activity (RSMF ¶¶ 98) and the same individual Ms. Cosculluela refused to change his interview score. (RSMF ¶¶ 15, 35, 50, 115). Less than 30 days later, Director Hawthorne and Mr. Kelley, at her behest, continued delaying the approval of Ms. Cosculluela's cases, which continued to affect her case aging reports. (RSMF ¶¶ 18-22, 26, 27, 116). The aforementioned activities culminated in Plaintiff's FY 2023 evaluation in which she received a "[H]ighly effective" rating; the lowest rating she ever received at the EEOC and which impacted her bonus. (RSMF ¶¶ 2, 28-38, 60, 116, 136).

Therefore, construing those facts in Ms. Cosculluela's favor, she engaged in statutorily protected activity when she, in addition to the forgoing, she complained about Director Hawthorne to management and headquarters before Director Hawthorne continued scrutinizing and delaying her work, yelled at her during management meetings, and ultimately authorized a reduced evaluation for FY 2023 in October 2023.

### iv. October 2023 through October 2024.

In October 2023, Ms. Cosculluela complained to Management at headquarters (RSMF ¶¶ 25, 45, 114, 116) and was interviewed and testified in Mr. Feige's federal court case. (RSMF ¶¶ 25, 116). In January, Mr. Kelley told Plaintiff that Ms. Cosculluela would be receiving a "[F]ully successful," for her FY 2024 evaluation despite the fact that the fiscal year ended 9 months later in September. (RSMF ¶¶ 28, 116). Commencing in March 2023 Ms. Cosculluela's work continued to be scrutinized by Director Hawthorne and Mr. Kelley by delaying adjudications and requesting her to re-write 27 case adjudications. (RSMF ¶¶ 22, 28, 35, 41, 42,116). This conduct and over scrutinizing of Ms. Cosculluela's work persisted for months, causing delays in her cases (RSMF ¶¶ 35, 116). Ultimately, Mr. Kelley's statement proved to be true and Ms. Cosculluela received a "[F]ully successful" rating and almost placed on a PIP for her FY 2024 evaluation. (RSMF ¶¶ 28, 35, 112).

Therefore, construing those facts in Ms. Cosculluela's favor, she engaged in statutorily protected activity when she complained to management at headquarters and testified as a witness in a Federal Court case against Director Hawthorne, before Director Hawthorne and Mr. Kelley continued scrutinizing and delaying the adjudication of her cases, stating 9 months before the end of the fiscal year that she would be placed on a PIP with a reduced evaluation and ultimately rating Ms. Coscuslluela a "[F]ully successful" rating and almost placed on a PIP for her FY 2024 evaluation for FY 2024 in October 2024.

**b.  Marerially Adverse Actions.**

The issues outlined herein are not mere "personality conflicts." The record presents classic jury questions regarding severity, pervasiveness, and retaliatory motive.  The facts outlined herein establish a work environment that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination and that environment rose to the level of a personnel action. The actions herein did, in fact, affect Ms. Cosculluela's employment as she was overly scrutinized, her work was delayed, the delay was used to reduce her FY performance evaluations and those evaluations negatively affected her monetary award, bonus and days off.  In fact, courts have held that receiving a "[F]ully successful rating in a performance evaluation constitutes a material change in the privilege—a performance bonus—of her employment and, as such, the reduced rating is a material adverse action.  *See Vidovic v. City of Tampa*, No. 8:16–cv–714–T–17AAS, 2017 WL 10294807, at *7 (M.D. Fla. Oct. 12, 2017).; *citing*, *Sly v. Secretary, Department of Veterans Affs.*, No. 8:17-cv-1868-T-AAS, Order, at 32 (Mid. D. Fla. Mar., 24, 2020.

Indeed, looking at the entire context, over scrutinizing and delaying Ms. Cosculluela's work, which caused delays in her aged cases that was ultimately used to provide a reduced FY performance evaluation could be interpreted by a reasonable jury as dissuading a reasonable work from reporting discrimination.  *See Rayner v. Dep't of Veterans* Affs., 684 F. App'x 911, 915 (11th Cir. 2017); (explaining that, where an alleged action is not per se adverse, the court "must look at the entire context" of the action). *Bush v. Regis Corp*., 257 F. App'x 219, 222 (11th Cir. 2007); *Summerlin v. M&H Valve Co*., 167 F. App'x 93, 96–97 (11th Cir. 2006).  Moreover, using this same lens, the Court cannot ignore that MIDO has a history of similar complaints over the years (RSMF ¶¶ #84) and that Director Hawthorne has had multiple complaints against her in TAMPO and MIDO by employees alleging discrimination and retaliation alleged by the very individuals that Ms. Cosculluela was questioned about.  (RSMF ¶¶ 17, 26, 57, 58, 59, 61).

Defendant's reliance on *Jackson v. Secretary, U.S. Dept. of Transp*. to support its claim that the actions outlined by Ms. Cosculluela were "internal grievances" about a manager and, as such, not protected activity.  2026 WL 100401, *3 (11th Cir. Jan. 14, 2026).  However, *Jackson* is distinguishable from the facts in Ms. Cosculluela's claim. Most notably, the court in Jackson upheld summary judgment because plaintiff therein did not, "[R]ely on other circumstantial evidence of discrimination, such as "suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred," and relied solely on comparator

15

evidence. *Id* at *2. In this matter, the Ms. Cosculluela complained about discrimination from Director Hawthorne related to her refusal to change Mr. Cole's score, a black male who previously filed claims against Director Hawthorne [RSMF 17, 35], and Mr. Feige's interview score, who previously filed claims against Director Hawthorne and who she vocalized that she disliked due to his Union activities [RSMF 354, 69, 70].

Indeed, the facts herein are more analogous to the ruling in *Harper v. Vilsack*, No. 23-22590-CIV, Order, at 7 (S.D. Fla. Jul. 26, 2024). In *Harper,* plaintiff alleged her supervisor harassed and discriminated against her repeatedly and, when she reported this conduct, subjected her to further harassment. *Id*. at 2.  Defendant therein first claimed, as here, that plaintiff's claims were time barred due to her failure to administratively exhaust them and because they were not sufficiently adverse. *Id*. at 6. The court held that as to her hostile work environment claim, plaintiff could rely on actions and stated that, "[P]reventing Plaintiff from raising all unexhausted actions when bringing her hostile work environment claim is inappropriate under any standard. *Id*. at 7-8. (*citing Monaghan*, 955 F.3d at 861 and *Smiley*, 778 F. Supp. 2d at 1294).  The court went on to confirm that, "[A]ssuming a request was made and denied, it is for the jury to decide whether the circumstances rendered the denial an adverse action.  Id at 9.  As such, the court denied the retaliation claim holding that, "[A] reasonable jury could find that the denial of a change in supervisor, in this context, would have dissuaded a reasonable worker from reporting discrimination. *Id*. at 17.  The court held that in her retaliatory hostile work environment claim, plaintiff successfully overcame her burden by inserting evidence that shortly after she made her first EEO complaint, her supervisor "increased summoning [plaintiff] into countless impromptu meetings to verbally criticize her performance, threaten future reprimands and to threaten her continued employment at USDA." *Id.* at 17-18.  The court held that despite defendant's attempts to minimize the conduct, the fact that shortly after she engaged in protected activity, her supervisor threatened her with future reprimands, if true, "[W]ell might have dissuaded a reasonable worker from making or supporting a charge of discrimination," and summary judgment is thus inappropriate. (*citing Buckley*, 97 F.4th at 799).

As the plaintiff in *Harper*, Ms. Cosculluela's retaliation commenced shortly after she refused to change evaluation scores (RSMF ¶¶ 17, 35, 50, 115), refused to change interview scores (RSMF ¶¶ 15, 35, 50, 115), complained about Director Hawthorne in the NewPoint Survey (RSMF ¶¶ 13, 14, 35, 115) and contacted management about the issues (RSMF ¶¶ 115, 117).  Those acts

were the catalyst for Ms. Cosculluela's immediate retaliation. She was threatened by management (RSMF ¶¶ 13, 14, 35, 115), her cases and work product cam under constant scrutiny (RSMF ¶¶ 13, 18, 24, 35,116, 123, 129), Director Hawthorne made comments about her reputation as a manager to other employees and at meetings (RSMF ¶¶ 24, 26, 27, 35, 116, 123) and she was provided a reduced rating for her FY 2023 Evaluation (RSMF ¶¶ 2, 28-38, 60, 116).

It should be noted that all the adverse actions herein were used to reduce her FY 2023 and FY 2024 Evaluations that resulted in a cash award that was less in value than the previous years. [RSMF ¶¶ 28, 29]. In fact, Defendant admitted and cited to Mr. Kelley's testimony that the reason for Ms. Cosculluela's FY 2023 inventory was, in part, "[T]he status of the case files, aged inventory…" [RSMF ¶¶ 35, 36]. In her FY 2024 Evaluation, Plaintiff received a "[F]ully successful," in part because, as Mr. Kelley wrote, her, "[L]ack of clear guidance impedes the employee's opportunity to successfully complete their tasks *without rework*. There have been several major issues with the work product submitted to management both in content and analysis which *hinders her team's performance*. (emphasis added). [RSMF ¶¶ 35, 36; DE 86-8, Exh. H, at pg. 7]. As already cited herein, a reduced performance evaluation that causes monetary harm vis-à-vis a reduced performance bonus is a material adverse employment action. *See Vidovic,* 2017 WL 10294807, at *7.

For the reasons stated herein, Defendant's summary judgment should be deemed inappropriate.

### c. **Additional Issues Raised by Defendant**.

In its motion, Defendant raises multiple issues that are either inapplicable or out of context. Therein, Defendant admits that Ms. Cosculluela's FY 2023 Evaluation is, in fact, an adverse employment action (See [DE 70] at pg. 19). However, she goes on to state that Mr. Kelley and Director Hawthorne were unaware of the complaint and, as per the ruling in *Durr v. Sec'y of the Dept't*, Ms. Cosculluela's claim fails. (See [DE 70] at pg. 13).

As previously stated above and as ruled by the Court in *Harper,* shortly after her complaint to management she suffered retaliation which, if true, "[W]ell might have dissuaded a reasonable worker from making or supporting a charge of discrimination and summary judgment is thus inappropriate." No. 23-22590-CIV, Order, at 7. Here and using the example only of her FY 2023 evaluation, Ms. Cosculluela was threatened with a reduced rating for FY 2024 (RSMF ¶¶ 28, 116), had a her work overly scrutinized for months causing delays in her aged inventory (RSMF ¶¶ 28,

35, 41, 42, 116) that ultimately resulted in receiving a "[F]ully successful rating" for FY 2024 based on the delays manufactured by management. (RSMF ¶¶ 28, 35, 112).

Here, there is disputed evidence that Director Hawthorne was aware of the complaints. Director Hawthorne was aware of participation in the NewPoint Survey because she admitted that as much when she stated, "[I] know you were in that meeting!" (RSMF ¶¶ 13, 14). Director Hawthorne was aware that headquarters had been receiving complaints about Director Hawthorne by Ms. Cosculluela since September 2023. (RSMF ¶¶ 25, 82, 102, 105, 108); (See RSMF DE 86-6, Exh. F at 00096). In November 2023, Mr. Colclough spoke to Director Hawthorne about Ms. Cosculluela, as well as, 5 other investigators that complained about harassment and retaliation related to their FY 2023 Evaluations and Mr. Colclough went so far as to "[S]hare his notes" from the meeting with the group. (RSMF ¶¶ 25, 82, 102, 105, 108); (See RSMF DE 86-6, Exh. F at 00097). Notwithstanding the foregoing, Mr. Colclough attempted to resolve the complaints by Ms. Cosculluela an the other supervisors complaining about their FY 2023 evaluation, but Director Hawthorne, "[D]id not support or agree to settlement of the matter." (RSMF ¶¶ 25, 82, 102, 105, 108); (See RSMF DE 86-6, Exh. F at 00097).

Moreover, Director Hawthorne was aware of complaints against her since August 2023. Indeed, headquarters had spoken to her related to another investigator, Latasha Nelson, who complained that her FY 2023 Evaluation was inappropriate and that she was retaliated against based on her Union activity, similar to Mr. Feige. (RSMF ¶¶ 105-108); (See RSMF DE 86-5, Exh. E at EEOC_FeigeII_0140-41). Mr. Colclough confirmed he changed Ms. Nelson's Evaluation score because, "[I] felt the supervisor retaliated against the MIDO investigator by mentioning her union activity during the rating process." (See RSMF DE 86-5, Exh. E at EEOC_FeigeII_0142); (See RSMF DE 86-4, Exh. D). Although Mr. Colclough spoke to Director Hawthorne and Mr. Kelley and requested that they upgrade Ms. Nelson's FY 2023 Evaluation rating, they "[R]efused to follow the directive" resulting in him changing it himself. (See RSMF DE 86-5, Exh. E at EEOC_FeigeII_0142).

Defendant also raises issues related to legitimate business reason and the standard for stating a hostile work environment claims. (See [DE 70] at pg. 13-18). Defendant is aware of Ms. Cosculluela's claim for hostile work environment retaliation. In deed, Defendant admits that in her EEO complaint and "Notice of Acceptance of Claim," Plaintiff alleged a hostile work environment on the basis of reprisal (protected activity). (See RSMF 49). The Complaint herein

18

complied with Fed.R.Civ.P. 10(b). *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (holding that, "The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading."). Testament to this is the fact that Defendant filed its Answer (See [DE 20]). As such, any argument to the contrary is incorrect and untimely as not raised in its Answer [DE 20] or any responsive pleading.

For the reasons stated in more detail herein, Ms. Cosculluela reiterates her allegations that the activity engaged in would establish that she has pointed to "some behavior" that could allow a reasonable jury to infer that her engagement in protected activity factored into Defendant's decision-making process, which presents an issue of Defendant's "motive," for the jury. *Buckley*, 97 F.4th at 795. As such, summary judgment is inappropriate.

### 3. Any Claims that Ms. Cosculluela Damages are Limited Fail.

In its Motion, Defendant claims that even if Ms. Coculluela could establish discriminatory and retaliatory animus tainted any adverse employment action, she could not meet the burden of showing but-for causation that he would be entitled to relief. (See [DE 70], pg. 18). Defendant again falls short. Indeed, the Supreme Court has established that a plaintiff is can seek injunctive or "other forward-looking relief," as well, compensatory damages such as loss wages. *See Babb I* at 1177-78; *Babb II*, at 1204-5.

First, the court in *Ford v. DeJoy* denied summary judgment on the issue of liability and concluded there was "an open question" as to the relief available to the plaintiff. No. 20-cv-00778, 2021 WL 6113657, at *10 (N.D. Ala. Dec. 27, 2021). It ultimately decided "[t]he question of relief [wa]s not yet ripe." *Id*. Here, should the Court conclude that a triable issue on the liability question exists, it does not need to decide the scope of relief available to Plaintiff.

Second, even if the question were properly before the Court, Defendant would not prevail. Defendant does not identify what portions of the *McDonnell Douglas* framework or convincing mosaic test would preclude Plaintiff from obtaining full relief; instead, she largely relies on her assertion that Plaintiff cannot meet his lesser burden of showing that Defendant's actions were "taint[ed]" by discrimination.

Here, Plaintiff claims that she alleged adverse employment actions would be adequate under the applicable standards and, as such, creates "an open question" as to the relief available to

Plaintiff. *Ford*, 2021 WL 6113657, at \*10.  In short, Ms. Cosculluela has offered enough evidence for a reasonable jury to conclude Defendant discriminated against him.  *See Troupe v. DeJoy*, 861 F. App'x 291, 294 (11th Cir. 2021); Buckley, 97 F.4th at 795; Tynes, 88 F.4th at 947.  Defendant's attempts to undermine Ms. Cosculluela's showings of adverse employment actions, discriminatory intent, or comparator employees should be deemed unavailing; she can present them to the jury. *See Buckley*, 97 F.4th at 795; (*citing*, *Harper v. Vilsack*, No. 23-22590-CIV, Order, at 15 (S.D. Fla. Jul. 26, 2024).

## IV.   CONCLUSION

Given the disputed facts that a jury must resolve, the Defendant's motion for summary judgment should be denied. Therefore, summary judgment in favor of Defendant is inappropriate. Ms. Cosculluela respectfully requests that the Court deny Defendant's motion for summary judgment on all surviving counts of the Complaint, allowing these matters to proceed to trial where a factfinder can determine the merits of Ms. Cosculluela's claims.

Dated April 6, 2026

/s/      *José A. Socorro*
**JOSÉ A. SOCORRO, ESQ.**
Florida Bar No.: 011675
AZOY SOCORRO, LLP
300 Aragon Ave, Suite 300
Coral Gables, Florida 33134
Tel: (305) 340-7542
Fax: (305) 418-7438
Email: jose@azoysocorro.com;
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed using the online CM/ECF Filing on this 6th day of April, 2026, and sent to Defense counsel Alexander Dergarabedian, Esq., Chantal Doakes Shelton, Esq., ASSISTANT U.S. ATTORNEY, 500 East Broward Blv., Suite 700, Fort Lauderdale, FL 33394, Alexander.Dergarabedian@usdoj.gov, chantel.doakesshelton@usdoj.gov.

/s/      *José A. Socorro*
**JOSÉ A. SOCORRO, ESQ.**
Florida Bar No.: 011675