UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  25-20423-CIV-KMM

MARISSA A. COSCULLUELA,

     *Plaintiff*,

v.

ANDREA LUCAS, Chair, U.S. Equal Employment
Opportunity Commission,

     *Defendant*.

_____/

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Andrea Lucas, Chair of the U.S. Equal Employment Opportunity Commission ("EEOC" or "Defendant"), by and through the undersigned Assistant United States Attorney and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, files her Reply to Plaintiff's Opposition to her Motion for Summary Judgment and incorporated Memorandum of Law. Defendant states that Plaintiff has failed to establish that there exist genuine issues of material fact, and Defendant is entitled to judgment as a matter of law.

Respectfully submitted,

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By:   **Alexander N. DerGarabedian**
     ALEXANDER N. DERGARABEDIAN
     Court ID A5503439
     United States Attorney's Office
     500 East Broward Blvd., Suite 700
     Fort Lauderdale FL 33394
     Telephone: (954) 660-5792
     E-Mail: Alexander.DerGarabedian@usdoj.gov
     *Counsel for Defendant*

1

## I.  **INTRODUCTION**

Plaintiff has failed to provide sufficient evidence to rebut that there do not exist genuine issues of material fact for trial. Instead, Plaintiff proffers the same unsupported allegations underlying the Complaint, without anything more. Specifically, Plaintiff relies on routine workplace disagreements and tribulations to support her allegations of retaliatory harassment, yet she conveniently fails to note that none of her complained of conduct constitutes reprisal as a result of protected activity. Further, she fails to provide similarly situated individuals outside her protected class and/or who did not engage in protected activity who she alleged were treated more favorably than she was.

Instead, Plaintiff relies on unsupported facts and contentions which are clearly contradicted by the record, and she attempts to supplement the dearth of her evidence by providing new unexhausted allegations that should not be considered. At its core, Plaintiff's theory fails for a straightforward reason: the same standards, expectations, and evaluation outcomes were applied to other managers, including those who engaged in no protected activity. That undisputed fact defeats any reasonable inference that retaliation tainted the decisions at issue. Therefore, the Defendant is entitled to judgment as a matter law and the present case should be dismissed.

## II.  **ARGUMENT**

### 1.  **PLAINTIFF HAS FAILED TO ESTABLISH MATERIAL ISSUES OF FACT FOR TRIAL TO SURVIVE SUMMARY JUDGMENT.**

To survive summary judgment, Plaintiff must present evidence sufficient to permit a reasonable jury to infer that retaliation played some role in the challenged actions, even without reliance on presumptions or burden-shifting frameworks. *See Ismael v. Roundtree*, 161 F.4th 752, 764-65 (11th Cir. 2025). The "convincing mosaic" is not a separate test, but a shorthand for this inquiry. Plaintiff cannot satisfy this inquiry by evidence reflecting routine workplace decisions, performance-related concerns, or subjective disagreement with management. Rather, Plaintiff must still identify evidence permitting an inference of retaliatory intent, such as evidence of differential treatment or proof that the employer's stated reasons are unworthy of credence. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).

Even considering the totality of the evidence, Plaintiff is required to proffer evidence from which a reasonable jury could infer a retaliatory animus. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023). Where, as here, the record reflects performance-based decisions

and lacks comparator evidence or proof of pretext, no such inference can be drawn. *Cunningham v. Mercedes-Benz U.S. Int'l, Inc.* No. 25-12423, 2026 WL 891844, at *3 (11th Cir. Apr. 1, 2026) (finding no "convincing mosaic" where the record reflected performance concerns and plaintiff failed to identify comparators or decisionmaker-linked evidence of discrimination).

Here, Plaintiff relies on unsupported speculation and conclusory allegations reflecting her disagreement with ordinary supervision as an alleged basis for retaliatory harassment, warranting summary judgment of her claims.

### a. Plaintiff's "Mosaic" Is Comprised of Non-Actionable Workplace Conduct.

Plaintiff characterizes her evidence as a "convincing mosaic" of retaliation. But a mosaic must consist of facts that support a reasonable inference of retaliatory intent. Here, Plaintiff proffers no evidence to raise any such inference. Instead, she relies on routine workplace conduct, including review of her casework, requests for revisions, delays in approval of matters, and criticism of her management style. She repeatedly labels this conduct as "over scrutiny," "nitpicking," or "targeted harassment," but offers no evidence in support of such contentions beyond her own conclusions.

Even accepting Plaintiff's allegations, the underlying record reflects only that management reviewed Plaintiff's work, questioned analyses, and required revisions. That is not retaliation. It is supervision. Plaintiff's disagreement with those actions does not convert them into evidence of retaliatory motive. Plaintiff also relies on isolated workplace interactions, including alleged criticism during meetings. Even accepting her version of events, such conduct is not severe, threatening, or pervasive, nor does it suggest retaliatory intent. Workplace criticism, even if unwelcome, does not establish a retaliatory hostile work environment. A plaintiff cannot construct a "mosaic" by grouping together non-actionable conduct and contend that it is retaliatory. The question is whether the evidence, viewed as a whole, permits a reasonable inference that retaliation played a role. Plaintiff fails to satisfy this burden.

### b. Routine Workplace Disagreements with Management Decisions Do Not Constitute Protected Activity.

To prove retaliation under Title VII, the plaintiff must establish he had 'a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Jackson v. Secretary, U.S. Dept. of Transp.*, Case No. 25-10894, 2026 WL 100401, *3 (11th Cir. Jan. 14, 2026) (*citing Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1331 (11th Cir. 2016)). "Unfair

treatment, absent discrimination based on race, sex, or national origin is *not* an unlawful employment practice under Title VII." *Id*. (*citing Coutu*, 47 F.3d at 1074 (emphasis in original).

In her opposition, Plaintiff relies on several alleged acts that she contends constitute "protected activity," but which, on their face, do not meet that legal definition. Specifically, she alleges that: (1) she disagreed with Ms. Hawthorne regarding the performance rating of her subordinate, Edgar Cole ("Mr. Cole") and allegedly "refused" to change his rating;[1] (2) she allegedly refused to change the interview score of Maximillian Feige ("Mr. Feige"), who had interviewed for the Enforcement Manager position[2]; (3) general workplace concerns raised  in a broadly administered confidential employee viewpoint survey; (4) and general workplace complaints raised to the Director of the Office of Field Programs, Thomas Colclough ("Mr. Colclough") and (5) her decision not to apply for the Enforcement Manager position. Docket Entry #87 – Plaintiff's Response to Defendant's Motion for Summary Judgment ("Opposition") at 3-4; Docket Entry #1 – Complaint at 16-17.

These actions do not constitute protected activity; at no point during any of these incidents did Plaintiff raise any issues regarding discrimination and/or unlawful activity. Docket Entry #87 – Plaintiff's Response to Defendant's Motion for Summary Judgment ("Opposition") at 3-4; *Harris v. Dept. of Children & Families*, Case No. 19-cv-62842-SMITH, 2021 WL 6750969, at fn 3 (S.D. Fla. April 16, 2021) (citing *Hawk v. Atlanta Peach Movers*, 469 F. App'x 783, 786 (11th Cir. 2012) (finding that complaining that employer acted unfairly toward plaintiff does not constitute protected activity if complaint does not suggest that employer was discriminating based on protected group). Instead, it is undisputed that Plaintiff raised general criticisms and dissatisfaction with the supervision of Ms. Hawthorne in her complaints to Mr. Colclough and to those administering the confidential employee viewpoint survey, and she voiced her disagreements with Ms. Hawthorne's managerial decision making and assessments with respect to the rating of Mr. Cole's performance and Mr. Feige's interview. Docket Entry #87 – Opposition at 3-4; Docket

---

[1] Plaintiff alleges that she "refused" to change the rating but fails to support this. Instead, the record establishes that while Ms. Hawthorne discussed the rating with Plaintiff, at no point did she request that Plaintiff change the rating. Docket Entry # 68 – Exhibit 4: Hawthorne Deposition at 107: 2-21.

[2] Plaintiff again fails to support her contention that she was directed to change any scores, and the record is clear the Plaintiff was never asked to change any scores but met with Ms. Hawthorne and the other interviewees to discuss how to process the results. *Id.*

Entry # 68 – Exhibit 6. Plaintiff does not and cannot demonstrate that discrimination or any other unlawful activity were raised in her complaints and merely proffers her disagreement with Ms. Hawthorne's managerial discretion, which does not constitute protected activity. *Id.*; *Coutu*, 47 F.3d at 1074 (holding that an employee did not engage in protected activity where, during a grievance hearing held by the employer, the employee made no allegation and offered no proof of unlawful discrimination but instead contended only that she deserved better treatment); *see also Birdyshaw v. Dillard's Inc.*, 308 Fed. Appx. 431, 436-437 (11th Cir. 2009) (affirming the finding that employee was not engaged in protected activity when employee's letter concerned harsh treatment by supervisor in relation to work-related dispute and did not allege discrimination on account of protected group).

Rather, Plaintiff's complaints about Ms. Hawthorne are nothing more than ordinary tribulations of the workplace, which are not actionable under Title VII. *Cheryl Diaz v. Miami-Dade County and Maj. Benny Solis*, 2026 WL 820526 *1, 24 (S.D.F.L. Mar. 25, 2026) (dismissing complaint because plaintiff's complaints about staffing matters, feeling unsupported and that her authority was undermined amounted to ordinary workplace tribulations and did not involve unlawful discrimination); *see also Plair v. Interactive Communication International, Inc.*, 2023 WL 2506423 *1, 4-5 (N.D.G.A. Feb. 9, 2023) (finding that making complaints to HR alone, without opposing discrimination, do not constitute protected activity).

Further, Plaintiff fails to demonstrate how her intention to and subsequent decision not to apply for an Enforcement Manager constitutes protected activity. *Williams v. Waste Management, Inc.*, 411 Fed. Appx. 226. 226-27 (11th Cir. Jan 25, 2011) (dismissing joint failure to promote and retaliation claim because employee failed to apply for the position, which negated his prima facie claims for his discrimination and retaliation claims). At no point did Plaintiff demonstrate that Ms. Hawthorne or anyone else in MIDO Management had anything to do with her own personal decision, or that discrimination played any part in dissuading her from applying. Docket Entry # 68 – Exhibit 1: Marissa Cosculluela Deposition at 122: 8-11; 218: 1-25; 219: 1-7. Therefore, Plaintiff fails to demonstrate that her failure to apply for the Enforcement Manager was influenced by anything other than her personal decision, and she cannot meet her burden to show that this was protected activity. *Williams*, 411 Fed.Appx at 226-27 (failure to apply for a position negates prima facie for discrimination and retaliation claims related to that position).

c. **Plaintiff is Unable to Demonstrate A Causal Nexus to Any Alleged Protected Activity.**

Plaintiff must show that protected activity played some role in the challenged actions. Her Opposition fails to establish that connection. Plaintiff relies on a confusing and imprecise timeline spanning nearly two years, while repeatedly asserting that retaliation began "immediately." This diffuse chronology does not establish causation. Plaintiff also fails to tie any specific protected activity to any specific decision. Instead, she presents a collection of events and invites the Court to infer causation without identifying a clear link. That is insufficient.

In fact, the record demonstrates the opposite. Plaintiff improperly relies on later events to support earlier alleged retaliation. Indeed, the sole timely allegation at issue here, Plaintiff's FY 2023 rating precipitated Plaintiff's EEO complaints, defeating any casual nexus.

To the extent Plaintiff relies on her filing of a hostile work environment complaint with the EEOC's Office of Civil Rights (hereinafter, "OCR"), Plaintiff is unable to establish both knowledge and/or causation. Docket Entry #87 – Opposition at 3-4. In her reply, Plaintiff alleges that she engaged in protected activity because she purportedly filed an EEO complaint in February 2023. Docket Entry #87 – Opposition at 3-4. However, the record affirmatively contradicts this statement and establishes that Plaintiff first contacted OCR on November 14, 2023, and formally filed her complaint on February 13, 2024, which is supported by Plaintiff's own pleadings and the Final Agency Decision ("FAD"). Docket Entry # 68 – Exhibit #10 (Final Agency Decision) at 2.; Docket Entry # 1 – Complaint at 8, ¶ 8-9. This timing defeats any casual nexus whereas the alleged adverse action at issue occurred before her protected activity. Docket Entry # 68 – Exhibit 10: Final Agency Decision at 1; Plaintiff's complaints to Thomas Colclough were made on October 30 and 31, 2023, after she was issued her performance rating for FY 23 on October 24, 2023. Docket Entry #68 Further, the rating was issued approximately nine (9) months after she participated in the employee viewpoint survey. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363-64 (11th Cir. Nov. 9, 2007).

Plaintiff also alleges that she engaged in protected activity by participating in a deposition for a coworker, Mr. Feige, which she claims occurred between October and December 2023. Docket Entry #87 – Opposition at 4. Plaintiff's allegation is again incorrect as to timing whereas this deposition actually occurred on January 11, 2024, rather than between October and December 2023. *See* Reply Exhibit 1, Plaintiff's January 11, 2024, Deposition Transcript Excerpt from Feige

V. Burrows, DE 65-1.[3]

Even accepting Plaintiff's asserted timeline, her claims of retaliatory harassment fail, because her protected activity occurred after the alleged "retaliatory acts" she claims she was subjected to. *Id.*; Docket Entry #87 – Opposition at 4. Further, given that her testimony actually occurred at least four (4) months after the last act she alleges was retaliatory, she fails to demonstrate the requisite casual nexus to establish that she was subjected to retaliatory harassment.

Finally, Plaintiff fails to demonstrate knowledge of any alleged protected activity. To succeed in her retaliation claims, Plaintiff must show that a decisionmaker was aware of the protected activity and there is a close temporal proximity between this awareness and the adverse action. *See Walton-Horton v. Hyundai of Ala.*, 402 F. App'x 405, 408-09 (11th Cir. 2010). "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression." *Bass v. Bd. of Cnty. Cmm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001). Thus, even if Plaintiff engaged in protected activity by filing an EEO complaint, she fails to establish that Ms. Hawthorne or anyone in MIDO Management knew of her protected activity. Docket Entry #68 – Exhibit 8: Declaration of Evangeline Hawthorne at 2, ¶ 12; Docket Entry #68 – Exhibit 4: Evangeline Hawthorne Deposition at 118: 22-25; 119: 115; *Smith v. Airtrain*

---

[3] This deposition transcript excerpt comes from DE 65-1 of <u>Feige v. Burrows</u>, 1:22-cv-22086, (S.D. Fla.) July 9, 2022. This Court can take judicial notice of this exhibit as public record. *See* <u>United States v. Jones</u>, 29 F.3d 1549 (11th Cir. 1994) *1553 ("court may take judicial notice of a document filed in another court "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.' " *Liberty Mut. Ins. Co.,* at 1388 (citation omitted).) *See also* <u>Lodge v. Kondaur Capital Corp.</u>, 750 F.3d 1263, 1273 (11th Cir. 2014) *1274 (The Lodges are correct that a court has "wide discretion" to take judicial notice of appropriate adjudicative facts at any stage in a proceeding, including at the summary judgment stage. See Fed. R. Evid. 201(d); Dippin' Dots, Inc. v. Frosty Bites Distribut., LLC, 369 F.3d 1197, 1204-05 (11th Cir. 2004). Nevertheless, the taking of judicial notice of facts is "a highly limited process." Dippin' Dots, Inc., 369 F.3d at 1205 (quotation marks omitted)."); *and* <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1278 (11th Cir. 1999) *1278 ("Fed.R.Evid. 201(b) provides for taking judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). Plaintiff alleges that her participation in this deposition was protected activity that took place between October and December of 2023. However, it occurred on January 11, 2024, as evidenced by the cover sheet of the deposition. The Defendant requests this Court take judicial notice of the attached deposition transcript excerpt of the Plaintiff from <u>Feige v. Burrows.</u>

*Airways, Inc.*, 744 F.Supp.2d 1274, 1281 (Md. Dist. Fl. 2010) (dismissing retaliation claim in part because there was no evidence official was aware of protected activity).

Therefore, Plaintiff's claims regarding the timing of her purported protected activity are either mistakenly incorrect or disingenuous, and the record clearly establishes that her protected activity occurred long after the alleged adverse acts she claims were made in retaliation to that alleged protected activity. *See* Reply Exhibit 1, Plaintiff's January 11, 2024, Deposition Transcript Excerpt from Feige V. Burrows, DE 65-1. Given that Plaintiff has failed to support her claims, this Honorable Court should not lend any credence to her unsupported allegations; she is unable to present evidence that would lead a reasonable fact finder to find that retaliatory harassment and/or hostile work environment occurred, and her claims must fail as a matter of law.

**d. Plaintiff Is Unable to Identify Any Similarly Situated Comparators and the Plaintiff's Evaluations Were the Product of Uniform Standards, Not Retaliation.**

Fatal to Plaintiff's Complaint is the fact that she fails to demonstrate that similarly situated individuals outside her protected class were treated differently than she was. Plaintiff alleges in her Opposition that she: (1) was subjected to comments by Ms. Hawthorne, including but not limited to having her character "discredited" and her work "nitpicked in February 2023;" (2) alleged scrutiny of her work in December 2022, February, June and September 2023; (3) was allegedly disrespected during an August 2023 management meeting; and (4) received a "Highly Effective" performance rating for FY 2023. Docket Entry #87 – Opposition at 3-4. At no point does Plaintiff provide any evidence that similarly situated individuals who are either outside her protected class and/or who did not engage in protected activity were treated more favorably than she was. *Id.* Instead, Plaintiff solely levies allegations that she was the lone individual who was singled out based on purported protected activity, without anything more. *Id.* Docket Entry #1 – Complaint at 8, ¶¶ 24, 25.

The record says otherwise; what is clear is that all the conduct that Plaintiff complains of amounts to nothing more than routine workplace disagreements, and which are neither retaliatory nor severe and/or pervasive harassment and cannot be construed to establish a hostile work environment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. Jun. 11, 2012) (holding that "only conduct that is 'based on' a protected category, such as race, may be considered in a hostile work environment analysis.").

As is clearly established in the record, ALL MIDO employees were subject to the same

metrics and review of their work as MIDO management shifted to prioritizing the resolution of aged cases. Docket Entry #68 – Exhibit 2: Scott Kelley Deposition at 101: 22-25, 112: 11-18. Further, as Plaintiff's supervisory chain, Mr. Kelley and Ms. Hawthorne were within their rights to review and correct Plaintiff's work; these duties are within their purview as supervisors and as those who oversaw work product that was outward facing to the general public. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1244–45 (11th Cir. 2001) (requiring employee to perform the essential duties of his role is not harassment, let alone conduct that is severe or pervasive). Plaintiff's dissatisfaction at having her work reviewed or disagreement with her supervisors - who rightly exercised their managerial discretion against her and her peers - does not mean that she was subjected to either retaliatory harassment and/or a severe and/or pervasive hostile work environment simply because she thinks her work was "overcriticized." Docket Entry # 87 – Opposition at 5. Instead, it reflects that Plaintiff was being held accountable for her work product, which is an expectation of her job duties. Docket Entry #68 – Exhibit 2: Scott Kelley Deposition at 231: 6-14; *MacLean v. City of St Petersburg*, 194 F. Supp. 2d 1290, 1299 (M.D. Fla. 2002) (workload distributions are an "'ordinary tribulation of the workplace' for which employees should expect to take responsibility.").

Further, Plaintiff's claims that she was "discredited" by Ms. Hawthorne in public comments, without identifying when those claims were made, where they were made, and to whom they were made. Docket Entry #87 – Opposition at 5-6. She further claims that her microphone was cutoff during a management meeting and that she was yelled at. *Id.* Even if true, this incident was not harassing nor was it severe or pervasive enough to constitute a hostile work environment.

Additionally, Plaintiff's decision not to apply for the Enforcement Manager position cannot be imputed to be retaliatory harassment and/or a result of a hostile work environment because there was no discrimination underlying Plaintiff's decision not to apply, and she has not proved otherwise, and Ms. Hawthorne already testified under oath that she never discouraged Plaintiff from applying. Docket Entry #68 – Exhibit 8: Declaration of Evangeline Hawthorne at 2; Docket Entry # 68 – Exhibit 4: Hawthorne Deposition at 122: ¶ 11-23.

Finally, Plaintiff's FY 2023 performance rating does not constitute retaliatory harassment or support a hostile work environment claim. The conduct alleged must rise to a level sufficient to support a viable harassment claim, and a single performance evaluation, even if disputed, falls far short of that threshold. *Aburaad v. Haines City, Florida*, 2022 WL 861578 (M.D.FL Mar. 23, 2022)

(dismissing complaint in part because plaintiff's complaints regarding performance assessments amounted to "ordinary workplace tribulations").

Moreover, the record forecloses any inference that the rating was retaliatory. The undisputed evidence shows that supervisors applied the same performance standards across investigators. Enforcement Manager Scott Kelley testified that multiple investigators, including individuals who had not engaged in any EEO activity, received the same "Highly Effective" rating that Plaintiff challenges. Docket #68 – Exhibit 2 at 97–98, 207. This uniform application of ratings defeats any claim that Plaintiff's evaluation was motivated by protected activity.

Accordingly, Plaintiff offers no evidence that her protected activity influenced any challenged decision. The record reflects routine, organization-wide management actions applied consistently across employees, including those who did not engage in protected activity. No reasonable fact finder could conclude that retaliation played any role in the challenged actions. Plaintiff's claims must therefore fail as a matter of law.

### 2.   PLAINTIFF'S FAILED TO ADMINISTRATIVELY EXHAUST OR PLEAD HER NEW 2024 ALLEGATIONS AND THEY CANNOT BE CONSIDERED.

Plaintiff attempts to expand her retaliation claim by relying on allegations related to her FY 2024 performance evaluation and purported heightened scrutiny by MIDO management, including claims that she faced threats of a Performance Improvement Plan, continued review of her work, and reassignment of investigators with aged cases. Docket Entry #87 at 2.

These allegations are not properly before the Court. This case is defined by Plaintiff's administrative charge and her Complaint, both of which are limited to events culminating in her FY 2023 performance evaluation in October 2023. Docket Entry 68, Exhibit 10 at 2; Docket Entry 1 at paragraph 23. Plaintiff did not raise any claim related to her FY 2024 evaluation or any alleged conduct occurring thereafter, nor did she plead any such allegations. That failure is dispositive. Plaintiff cannot expand the scope of her claims through arguments raised for the first time in opposition to summary judgment. The Complaint defines the claims at issue, and Defendant was entitled to rely on that pleading in framing its defense. Allegations concerning events in the underlying complaint are not properly before this Court.

Plaintiff's failure to exhaust provides an independent bar. A federal employee must raise each claim during the administrative process before seeking judicial review and claims not presented to the Agency are barred. These allegations are barred for failure to exhaust

administrative remedies. A federal employee must raise each discriminatory act during the EEO process before seeking judicial review and claims not presented at the administrative level cannot be pursued in litigation. *Rodda v. Univ. of Miami*, 542 F.Supp.3d 1289, 1295-96 (S.D.FL. 2021) (dismissing claim for failure to exhaust remedies). Plaintiff's allegations underlying the instant complaint end in October 2023, when she received her performance rating for FY 2023. Docket Entry 68 – Exhibit #10 (Final Agency Decision) at 2. Plaintiff did not raise any claim related to her FY 2024 evaluation, continued scrutiny, or reassignment of work, nor did she do so within the required forty-five-day period. These allegations were never investigated and fall outside the scope of the administrative record.

Nor can Plaintiff avoid these defects by characterizing the FY 2024 allegations as part of a broader course of conduct. The Agency was never given notice of these claims or an opportunity to investigate them; they are not merely background facts, but new theories of liability based on discrete actions that require independent administrative review. Plaintiff bears the burden to raise these claims administratively, and she is subject to the forty-five (45)-day time limit for filing additional claims, which she failed to do timely. Docket Entry #87 – Opposition at 6. Given that she did not timely complain of these acts, she is estopped from raising them now, as they have not been investigated, and have not been administratively exhausted. *Id.* Plaintiff cannot now attach and rely on these allegations to survive summary judgment. *Id.*

### III.  <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff's claims fail as a matter of law. Plaintiff attempts to recast routine workplace disputes and ordinary management decisions as discrimination, retaliation, and harassment, but the record shows that the challenged actions were applied uniformly and were not influenced by any protected activity. Plaintiff's conclusory and unsupported allegations are insufficient to create a genuine dispute of material fact. Additionally, her ancillary claims that were not administratively exhausted or not properly pled do not rebut the clear record reflecting that, MIDO management neither knew about the alleged protected activity nor did it influence their managerial decisions. Accordingly, the Defendant is entitled to judgment as a matter of law, and the complaint should be dismissed with prejudice.